**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION**

RICK CASHATT,

    Plaintiff,

v.                                   CIVIL ACTION NO.
                                       2:09-CV-220-RWS

MERRIMAC ASSOCIATES, INC.., *et al.*,

    Defendants.

## **ORDER**

This case comes before the Court on Defendants' Motion for Summary Judgment [41], Plaintiff's Motion to Withdraw Dkt. No. 43 [45], and Plaintiff's Motion to Withdraw Dkt. No. 42-4 [46]. After a review of the record, the Court enters the following order.

## **I. Factual Summary**

Defendant Merrimac Associates, Inc. ("Merrimac") provides "design, construction supervision, start-up[,] and project management services primarily in the power transmission and distribution, industrial, and energy (nuclear, fossil[,] and renewable) industries." Def.'s SMF, Dkt. No. [41-2] at ¶ 1; Pl.'s

Resp. SMF, Dkt. No. [42-7] at ¶ 1. Defendant EARTH is a company which is in the development stages and has developed a "method of refining biomass (such as wood, grass, and agricultural waste products) by using super compaction technology to remove water from the biomass in order to convert it to solid fuel that can either replace or supplement coal in a power plant." Def.'s SMF, Dkt. No. [41-2] at ¶ 2; Pl.'s Resp. SMF, Dkt. No. [42-7] at ¶ 2. David Shaffer developed EARTH's technology and, at the time of Plaintiff's employment, served as the President and CEO of Merrimac. Def.'s SMF, Dkt. No. [41-2] at ¶ 1; Pl.'s Resp. SMF, Dkt. No. [42-7] at ¶ 1. As well, Oxantium Group financed EARTH along with Merrimac, and Bill Marsh–a general partner at Oxantium–served on EARTH's board following the investment. Def.'s SMF, Dkt. No. [41-2] at ¶¶ 7-8; Pl.'s Resp. SMF, Dkt. No. [42-7] at ¶ 7-8. Shaffer and Marsh were the only members of EARTH's board from its inception until July 2009. Def.'s SMF, Dkt. No. [41-2] at ¶ 9; Pl.'s Resp. SMF, Dkt. No. [42-7] at ¶ 9.

Plaintiff and Shaffer first met in 2004 or 2005 when Plaintiff represented a boiler manufacturing company. Def.'s SMF, Dkt. No. [41-2] at ¶ 13; Pl.'s Resp. SMF, Dkt. No. [42-7] at ¶ 13. In September 2008, Shaffer called the

Plaintiff and told him about EARTH. Def.'s SMF, Dkt. No. [41-2] at ¶ 13; Pl.'s Resp. SMF, Dkt. No. [42-7] at ¶ 13. In December 2008, Plaintiff was hired by Merrimac. It is disputed whether Plaintiff was hired to serve as the "COO of EARTH" but, at bottom, Plaintiff and Shaffer at least referred to the Plaintiff as the COO in his correspondence with third parties. Def.'s SMF, Dkt. No. [41-2] at ¶ 15; Pl.'s Resp. SMF, Dkt. No. [42-7] at ¶ 15.

Plaintiff states that the parties agreed on the "material terms" of his agreement to be COO, namely that his compensation was agreed to be "$200,000, an equity position, which Dave owed me an answer on, on what we were talking about, and a bonus structure." Id. at 158:4-6. When Plaintiff took the position, he understood that his compensation would be deferred until Oxantium's bridge financing was released which should have occurred in two to three months. Cashatt Dep., Dkt. No. [36] at 103:1-9. However, Shaffer maintains that Plaintiff would not be eligible to be paid anything until EARTH obtained its second round of financing. Pl.'s SMF, Dkt. No. [42-8] at ¶ 35; Def.'s Resp. SMF, Dkt. No. [47-1] at ¶ 35.

While working for the Defendants, Plaintiff conducted an audit and made various sales presentations in Georgia. Dep. Marsh, Dkt. No. [39-1] at 81:9-16;

3

Cashatt Dep., Dkt. No. [36] at 88:18-89:10. He also conducted other sales calls via e-mail and telephone as the company, as a start-up, wished to avoid excessive travel expenses. Cashatt Dep., Dkt. No. [36] at 88:18-89:10.

Plaintiff states that in May 2009 the EARTH Board of Directors was going to vote on making him CEO. Def.'s SMF, Dkt. No. [41-2] at ¶ 17; Pl.'s Resp. SMF, Dkt. No. [42-7] at ¶ 17. Shaffer maintains he never offered the Plaintiff that position. Def.'s SMF, Dkt. No. [41-2] at ¶ 16; Pl.'s Resp. SMF, Dkt. No. [42-7] at ¶ 16. Regardless, by June 30, 2009, no agreement was struck and the Defendants terminated the Plaintiff. Pl.'s SMF, Dkt. No. [42-8] at ¶ 83; Def.'s Resp. SMF, Dkt. No. [47-1] at ¶ 83. Plaintiff then filed this lawsuit.

## II. Preliminary Matters

As a preliminary matter, Plaintiff's motions to withdraw documents which were not properly redacted pursuant to Standing Order 04-02 [45, 46] are **GRANTED, nunc pro tunc**.

## III. Motion for Summary Judgment

### A. Legal Standard

Federal Rule of Civil Procedure 56 requires that summary judgment be granted "if the movant shows that there is no genuine dispute as to any material

4

fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "The moving party bears 'the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1259 (11th Cir. 2004) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal quotations omitted)). Where the moving party makes such a showing, the burden shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

The applicable substantive law identifies which facts are material. Id. at 248. A fact is not material if a dispute over that fact will not affect the outcome of the suit under the governing law. Id. An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. at 249-50.

In resolving a motion for summary judgment, the court must view all evidence and draw all reasonable inferences in the light most favorable to the

5

non-moving party. Patton v. Triad Guar. Ins. Corp., 277 F.3d 1294, 1296 (11th Cir. 2002). But, the court is bound only to draw those inferences which are reasonable. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (internal citations omitted); see also Matsushita, 475 U.S. at 586 (once the moving party has met its burden, the nonmoving party "must do more than simply show there is some metaphysical doubt as to the material facts").

### B. Judicial Estoppel

As a preliminary matter, Defendant argues that all of Plaintiff's claims should be dismissed pursuant to judicial estoppel as Plaintiff failed to amend his Chapter 13 bankruptcy petition to alert the Court that he became employed with the Defendants. The doctrine of judicial estoppel precludes a plaintiff from asserting a claim in a judicial proceeding that contradicts the position taken under oath in a bankruptcy proceeding. Parker v. Wendy's Int'l, Inc., 365 F.3d

6

1268, 1271 (11th Cir. 2004). The Eleventh Circuit has adopted a two-prong test for determining the application of judicial estoppel. First, the prior inconsistent position must be asserted under oath. Burnes v. Pemco Aeroplex, 291 F.3d 1282, 1285-88 (11th Cir. 2002). Next, the court considers whether the inconsistent statements amount to a manipulation of the judicial system. See id. at 1287-88. As Burnes demonstrates, where a party fails to list a potential employment claim on her bankruptcy disclosure forms and later brings that claim in court, the first factor is met and the issue becomes one of intent. See id. (finding first factor met under circumstances). Intent may be inferred from the record, particularly where a party knew about her undisclosed claims and had a motive to conceal them from the bankruptcy court. Id. at 1287.

Defendants argue that this case is "virtually identical" to Robinson v. Tyson Foods, Inc., 595 F.3d 1269 (11th Cir. 2010). In Robinson, the debtor filed the relevant bankruptcy in May 2002. In September 2005, the debtor quit her job with the defendant due to harassment, racial abuse, and intimidation, and in October 2006, filed suit on those allegations. In May 2007, one of the debtor's creditors moved for a dismissal of her plan due to non-payment. But prior to the hearing, the debtor brought her payments current and the motion

7

was withdrawn. The debtor satisfied her plan in July 2007. Two months later, during her deposition in the discrimination suit, the defendant learned that the debtor had never amended her petition to reflect the discrimination suit or a worker's compensation claim which she filed after her husband died on the job. The defendants then moved to assert judicial estoppel against the debtor in the discrimination suit because she had committed a fraud on the court.

The Eleventh Circuit upheld the district court's finding that the defendants were entitled to summary judgment. The Circuit stated that by "failing to update her bankruptcy schedule to reflect her pending claim, Robinson represented that she had no legal claims to the bankruptcy court while simultaneously pursuing her legal claim against [the defendant] in the district court." Id. at 1275 (emphasis added). As well, the Court found a judicial mockery because had the debtor settled her suit within the nine-month window between filing the discrimination suit and discharge, she would have been able to keep the proceeds. Id. at 1275-76.

The Court finds that this case is not controlled by Robinson. Here, Plaintiff filed for Chapter 13 bankruptcy on July 25, 2005. His plan was confirmed on September 23, 2005, and he made all of his payments by August

8

8, 2008. On December 1, 2008, Plaintiff accepted his position with the Defendants with the understanding his compensation would be deferred until the bridge financing was available. On May 19, 2009, Plaintiff received his discharge order, and on June 30, 2009, Plaintiff was terminated by the Defendants and his claims which underlie this suit arose. In sum, unlike Robinson, where the debtor filed suit nine-months before her discharge, Plaintiff here filed suit October 20, 2009–roughly four months after discharge and his claims arose. Therefore, Plaintiff could not have taken inconsistent positions about this legal claim as it did not exist when he received his discharge.

Moreover, the Court does not find that Plaintiff had the intent to make a mockery of the judicial system. Plaintiff knew that his compensation was deferred, and thus did not know an exact date he would receive payments. Thus, until he received any funds, no creditor was cheated. As well, he did not have a legal claim until he was terminated, post-discharge. This is not like Robinson where the debtor was actively pursuing her payment plan and her discrimination lawsuit at the same time. Thus, the Court does not find judicial estoppel should attach.

9

### C. Breach of Contract

Defendants first move for summary judgment on Plaintiff's breach of contract claim. "There are four essential elements to a valid contract: (1) there must be parties able to contract; (2) consideration; (3) assent of the parties to the terms of the contract; and (4) a subject matter upon which the contract can operate." Mitchell v. Ga. Dep't of Cmty. Health, 635 S.E.2d 798, 805 (Ga. Ct. App. 2006). Beyond those elements, in the employment context

> [t]he nature and character of the services to be performed, the place of employment and the amount of compensation to be paid therefor are all essential elements of an employment contract and must be stated with sufficient definiteness to enable one to ascertain the intent of the parties as to these vital features of the contract. If any portion of the proposed terms is not settled, or no mode agreed on by which it may be settled, there is no agreement.

Farr v. Barnes Freight Lines, Inc., 101 S.E.2d 906, 907 (Ga. Ct. App. 1958).

Here, the Court finds that no agreement was formed as the parties did not agree upon compensation for either the "COO" or "CEO" position. Taking the facts most favorable to the Plaintiff, Plaintiff himself clearly states that his compensation was never resolved for either position. First, as to the COO job, Plaintiff states that while the parties agreed on his cash payment –$200,000– they did not resolve his equity stake. In fact, that stake was "to be determined"

10

and Plaintiff came on board "as a matter of faith" that the parties would ultimately be able to resolve that issue. Cashatt Dep., Dkt. No. [41-3] at 84:5-12. Additionally, Plaintiff states that they "tried numerous times to get something for the – I tried to get something for the chief operation officer's position and I never got any drafts produced." Id. at 157:3-6. And he admits that they never attempted to execute an employment agreement for the COO position. Id. at 157:19-22. While Plaintiff does state that they agreed on the "material terms" of a COO agreement, he then explains that his compensation was agreed to be "$200,000, an equity position, <u>which Dave owed me an answer on, on what we were talking about</u>, and a bonus structure." Id. at 158:4-6 (emphasis added). Thus, even under Plaintiff's understanding of what occurred, an employment contract was not formed as his COO compensation was never finalized–the equity stake piece remained undetermined.

As to the CEO position, Plaintiff clearly did not have a contract. Eight days before Plaintiff was fired he wrote the Defendants and stated "we <u>need to negotiate</u> the terms of my employment agreement by Wednesday evening at 5:00 p.m." Dkt. No. [41-11] at 3 (emphasis added). He then went on to list the various terms he would require in his contract. Further, four days before his

11

termination, Plaintiff wrote "[a]s time passed, I repeatedly asked [Shaffer] for a contract officially making me CEO and stating my part of the company. [Shaffer] always had an excuse. [Shaffer] finally sent me [his] contract with Oxantium and said for me to change it to reflect my terms. I prepared the contract and sent it to [Shaffer] and Bill [Marsh]. <u>Nothing happened</u>." Dkt. No. [41-12] at 2 (emphasis added). Therefore, it is evident that a CEO contract never existed as the parties never agreed on a compensation term. As a result, Defendant's Motion is **GRANTED** as to the breach of contract claim.

### D. Quantum Meruit

Defendants next move for summary judgment on Plaintiff's quantum meruit claim.

> In order to recover under a quantum meruit theory, claimant must show (1) his performance as agent of services valuable to the defendants; (2) either at the request of the defendants or knowingly accepted by the defendants; (3) the defendants' receipt of which without compensating claimant would be unjust; (4) and claimant's expectation of compensation at the time of the rendition of the services.

<u>Artrac Corp. v. Austin Kelley Adver., Inc.</u>, 399 S.E.2d 529, 533-34 (Ga. Ct. App. 1990).

AO 72A
(Rev.8/82)

Defendant first argues that the Plaintiff did not provide services which were valuable to the Defendants. However, Bill Marsh–a member of Earth's Board of Directors while Plaintiff worked for the Defendants–testified that he believed Plaintiff was owed somewhere between $18,000 to $25,000 for audit work which the Plaintiff completed. Dep. Marsh, Dkt. No. [39-1] at 81:9-16. As well, Plaintiff has put forward evidence that–at the Defendants' direction–Plaintiff made presentations to Anheuser Bush in Cartersville, Georgia and a "big show" in Rabun Gap. See Cashatt Dep., Dkt. No. [36] at 88:18-89:10; Dkt. No. [42-2] (stating in an email by Shaffer that Plaintiff was the COO of EARTH and that Cashatt was organizing a demonstration for EARTH in Rabun Gap). As well, Plaintiff assisted Shaffer in searching for capital investment. Cashatt Dep., Dkt. No. [36] at 89:13-21.

Defendants argue that even though Plaintiff may have completed sales calls, no "fruit was borne out of his labor" as no actual sales were made. Def.'s Br., Dkt. No. [41-1] at 14. However, Plaintiff states that EARTH's biomass machine was not perfected; thus, there was not a finished product which was operational. Cashatt Dep., Dkt. No. [36] at 98:18-23. And, the Eleventh Circuit has noted that providing the Defendants with business sources and contacts may

13

be a service which is cognizable under quantum meruit. Litsky v. G.I. Apparel, Inc., 156 Fed. App'x 107, 110 (11th Cir. 2005) (applying Georgia law). Moreover, under Georgia law, the reasonable value of services to the recipient is a question for the finder of fact. Id. at 110 n.4 (applying Georgia law).[1] Thus, the Court cannot find as a matter of law that no services of value were provided to the Defendants.

Defendants additionally argue that because the parties initially understood that Plaintiff's compensation would be deferred, Plaintiff did not expect compensation at the time of the rendition of the services. However, while Plaintiff did not expect to be paid immediately, he always expected to be paid. Moreover, the fact that the compensation was to be deferred does not mean that he did not expect to receive compensation–only that he did not expect

---

[1] Defendants additionally argue that Plaintiff has not presented evidence of what those services would be worth. However, Plaintiff has put forward evidence that Shaffer stated a reasonable salary for the COO position was $150,000/year–whether or not that number was actually agreed upon. Thus, at a minimum, the Defendants would have been willing to pay someone $150,000 to serve as the COO and to complete the types of services that Cashatt provided. Shaffer Dep., Dkt. No. [40] at 40:21-24. Moreover, Defendant's board-member Marsh calculated what he thought Cashatt was owed by taking a yearly salary and dividing it to determine the rate Cashatt was owed for time incurred. Dep. Marsh, Dkt. No. [39-1] at 81:9-16. Thus, the Court finds that this evidence meets Plaintiff's burden as even Defendants' witness finds it customary to calculate Plaintiff's value using such an evaluation scale.

AO 72A
(Rev.8/82)

to be paid at that moment. Per the Plaintiff's testimony, Plaintiff stated it was the parties' understanding that he would be paid once the bridge loan was received. As that financing had been committed but not yet received, the Plaintiff expected that the delay in payment would be two to three months. Cashatt Dep., Dkt. No. [36] at 103:1-9.

As well, it is worth noting that Shaffer wrote that he and Cashatt should be paid out of the first round of financing to "catch-up" on their salaries. Dkt. No. [43-6] at 1 ("Note: Rick and I have not taken a salary as of yet. We intend to also use the bridge loan to catch-up on back pay."). While Shaffer states that he mistyped and should have written that they would be paid after the second round of financing, that dispute creates an issue of fact which cannot be resolved at this stage. Defendants' Motion is **DENIED** as to Plaintiff's quantum meruit claim.

### E. Attorney Fees

Defendant also asks this Court to find as a matter of law that Plaintiff is not entitled to attorney fees. Plaintiff argues in response that it is entitled to attorney fees under O.C.G.A. § 13-6-11 because Defendant has acted in bad faith, has been stubbornly litigiousness, and has caused Plaintiff unnecessary

15

trouble and expense. The Court concludes that Plaintiff has put forth sufficient evidence of bad faith to satisfy its burden on summary judgment. The Plaintiff has failed to produce any evidence, however, of stubborn litigiousness or unnecessary trouble or expense.

The general rule in Georgia is that attorney fees are not available unless authorized by statute or contract. O'Conner v. Bielski, 701 S.E.2d 856, 858 (Ga. 2010). By statute, "litigation expenses" are available "where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense." O.C.G.A. § 13-6-11. "Litigation expenses" under this provision include attorney fees. See, e.g., Chong v. Reebaa Constr. Co., Inc., 665 S.E.2d 435, 437 (Ga. Ct. App. 2008) (awarding attorney fees under O.C.G.A. § 13-6-11 upon finding of bad faith). These bases for attorney fees are considered in turn.

### 1. Bad Faith

With regard to bad faith, Plaintiff argues that while Shaffer told Plaintiff he would be paid when the first round of financing–the bridge loan–came in, Shaffer revealed in his deposition that Plaintiff would not be able to be compensated until the second round of financing. Bad faith must "relate[] to the

16

defendant's conduct during the subject transaction prior to litigation, not to conduct in defending the litigation." Id. In a breach of contract action, conduct rises to the level of bad faith only if it was motivated by some "interested or sinister motive." Lexmark Carpet Mills, Inc. v. Color Concepts, Inc., 583 S.E.2d 458, 461 (Ga. Ct. App. 2003). See, e.g., Tattersall Club Corp. v. White, 501 S.E.2d 851, 855-56 (Ga. Ct. App. 1998) (finding bad faith where employer refused to pay employee compensation due under a contract, despite lack of any bona fide controversy as to whether employee was entitled to compensation, and despite fact that employer was admittedly satisfied with employee's performance). Bad faith does not exist where a breach of contract merely results from "an honest mistake as to one's rights or duties." Id. Finally, whether some conduct amounts to bad faith under O.C.G.A. § 13-6-11 is generally for the jury to decide. Mariner Health Care Mgmt. Co. v. Sovereign Healthcare, LLC, 703 S.E.2d 687, 691 (Ga. Ct. App. 2010). "Indeed, 'only in the rare case where there is absolutely no evidence to support the award of expenses of litigation would the trial court be authorized to grant summary adjudication on such issues.'" Id. (quoting Am. Med. Transp. Group v. Glo-An, Inc., 509 S.E.2d 738, 741 (Ga. Ct. App. 1998)).

Here, Plaintiff asserts that Shaffer induced the Plaintiff to take the COO position by promising him that his compensation would only be delayed two to three months, or until the bridge loan came in, but in all reality, Shaffer never intended to pay him until a second round of financing occurred–if that ever occurred. As well, Plaintiff's theory is supported by Shaffer's email which states that when the bridge loan came in, Plaintiff and Shaffer would be "caught up" on their salaries. Because this is evidence that Defendants, by way of Shaffer, acted with an interested motive to receive benefits without intending to provide payment, the Court cannot say as a matter of law that Defendants did not act in bad faith.

### 2. Stubborn Litigiousness and Unnecessary Trouble and Expense

Plaintiff also contends that Defendants have been stubbornly litigious and have caused Plaintiff unnecessary trouble and expense. In support of this argument, Plaintiff points only to the fact that Defendants owed the Plaintiff compensation and refused to pay him. Recovery of attorney fees under O.C.G.A. § 13-6-11 on the basis of stubborn litigiousness or conduct causing unnecessary trouble and expense may be had only where no bona fide controversy exists between the parties. Tattersall, 501 S.E.2d at 856.

Conversely, attorney fees may not be awarded on either of these grounds where "a genuine dispute exists–whether of law or fact, on liability or amount of damages, or on any comparable issue." Brown v. Baker, 398 S.E.2d 797, 800 (Ga. Ct. App. 1990).

While there is a genuine issue of material fact as to whether Defendant's actions were taken in bad faith, a bona fide controversy was presented in this litigation as to what Cashatt is owed. Plaintiff asserts that his salary was $200,000 per year, but this Court has found no contract to that effect. The Court thus finds as a matter of law that Plaintiff is not entitled to attorney fees on grounds of stubborn litigiousness or conduct causing unnecessary trouble and expense.

Based on the foregoing, Defendant's Motion for Summary Judgment is **GRANTED** as to Plaintiff's claim for attorney fees on the basis of stubborn litigiousness and unnecessary trouble and expense. Defendant's Motion for Summary Judgment is **DENIED**, however, as to Plaintiff's claim for attorney fees on the basis of bad faith.

19

**IV. Conclusion**

Defendants' Motion for Summary Judgment [41] is **GRANTED, in part** and **DENIED, in part**. Plaintiff's claims for quantum meruit and attorney's fees remain.  As well, Plaintiff's Motion to Withdraw Dkt. No. 43 [45], and Plaintiff's Motion to Withdraw Dkt. No. 42-4 [46] are **GRANTED, nunc pro tunc**. As a result of the foregoing, the parties are required to file their joint, proposed pretrial order within 30 days of this order.

**SO ORDERED**, this  16th  day of February, 2012.

_____
RICHARD W. STORY
UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)